UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| CATANYA B., | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Case # 1:21-cv-227-DB |
| | § | |
| COMMISSIONER OF SOCIAL SECURITY, | § | MEMORANDUM DECISION |
| | § | AND ORDER |
| Defendant. | § | |

## INTRODUCTION

Plaintiff Catanya B. ("Plaintiff") brings this action pursuant to the Social Security Act (the "Act"), seeking review of the final decision of the Commissioner of Social Security (the "Commissioner"), that denied her application for Disability Insurance Benefits ("DIB") under Title II of the Act, and her application for supplemental security income ("SSI") under Title XVI of the Act. *See* ECF No. 1. The Court has jurisdiction over this action under 42 U.S.C. §§ 405(g), 1383(c), and the parties consented to proceed before the undersigned in accordance with a standing order (*see* ECF No. 18).

Both parties moved for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). *See* ECF Nos. 11, 13. Plaintiff also filed a reply brief. *See* ECF No. 15. For the reasons set forth below, Plaintiff's motion for judgment on the pleadings (ECF No. 11) is **DENIED**, and the Commissioner's motion for judgment on the pleadings (ECF No. 13) is **GRANTED**.

## BACKGROUND

This case has a long history—it has been remanded three times by this Court. Plaintiff protectively filed applications for DIB and SSI on December 15, 2009, alleging disability beginning August 15, 2009 (the disability onset date), due to HIV positive status. Transcript

("Tr.") 22, 174. The claims were initially denied on April 9, 2010, after which Plaintiff requested a hearing. *Id*. On July 26, 2011, Administrative Law Judge William Straub ("ALJ Straub") held a hearing in Buffalo, New York, at which Plaintiff appeared and testified and was represented by Amanda Jordan, an attorney. *Id*. ALJ Straub issued an unfavorable decision on September 13, 2011, finding that Plaintiff was not disabled. Tr. 29. After the Appeals Council denied Plaintiff's request for review on February 13, 2013 (Tr. 1), Plaintiff timely filed a complaint in the United States District Court for the Western District of New York. Tr. 549.

On April 28, 2014, District Judge Richard J. Arcara adopted the report and recommendation of Magistrate Judge Hugh B. Scott, recommending that the ALJ's decision be reversed and remanded to the Commissioner on the grounds that ALJ Straub failed to explain the weight assigned to the opinions of consultative examiners Robert Hill, Ph.D. ("Dr. Hill"), and Thomas Ryan, Ph.D. ("Dr. Ryan"). Tr. 570, 545. On June 20, 2014, the Appeals Council remanded the case to an administrative law judge for further proceedings consistent with the Court's order. Tr. 577.

On July 8, 2015, Administrative Law Judge Bruce Mazzarella ("ALJ Mazzarella") held a hearing in Buffalo, New York, where Plaintiff appeared and testified. Tr. 473. ALJ Mazzarella issued a second unfavorable decision on August 6, 2015, which was appealed directly to this Court. On May 25, 2016, this Court ordered the final decision of the Commissioner be reversed pursuant to a stipulation between both parties. Tr. 913, 914. On August 30, 2016, the Appeals Council ordered the administrative law judge to further evaluate Plaintiff's symptoms and provide rationale in accordance with the disability regulations; give further consideration to the treating and non-treating source opinions; give further consideration to Plaintiff's maximum

residual functional capacity ("RFC"); and obtain evidence from a vocational expert to clarify the effect of the assessed limitations. Tr. 920.

On July 25, 2018, Administrative Law Judge William M. Weir ("the ALJ") held a hearing in Buffalo, New York, where Plaintiff appeared and testified and was represented by Zachary Zabawa, an attorney. Tr. 840. Alvin Stein, M.D. ("Dr. Stein"), a medical expert, and Dawn Blythe, an impartial vocational expert, also appeared and testified. Tr. 840, 864, 1410.[1] On advice of her counsel, Plaintiff amended her onset date and requested a closed period of disability from August 15, 2009 to August 21, 2017, as Plaintiff had returned to work full time on August 21, 2017. Tr. 840.

On October 12, 2018, the ALJ issued an unfavorable decision. Tr. 854. This decision was appealed directly to this Court, which resulted in a third remand on November 19, 2019, again pursuant to a stipulation between the parties. Tr. 1385-88. On April 23, 2020, the Appeals Council issued an order finding that the ALJ did not adequately evaluate the opinion of treating physician Alyssa Shon, M.D. ("Dr. Shon") and failed to provide adequate reasons for assigning great weight to the opinion of medical expert Dr. Stein and, accordingly, remanded the case for further evaluation of said opinions and reconsideration of Plaintiff's RFC. Tr. 1391-92.

Thereafter, the ALJ held a telephonic hearing[2] on September 8, 2020, at which Plaintiff appeared and testified and was represented by Nicholas Divirgilio, an attorney. Joseph Young, an impartial vocational expert, also appeared and testified. Tr. 1302. The ALJ issued another unfavorable decision on October 13, 2020, finding that Plaintiff was not disabled. Tr. 1299-1328. Plaintiff appeals that decision directly to this Court.

---

[1] The Court notes that the administrative record contains two copies of the oral transcript of the July 25, 1018 hearing and both may be cited in this opinion. *Compare* Tr. 864-906 *with* Tr. 1410-50.

[2] Due to the extraordinary circumstance presented by the Coronavirus Disease 2019 ("COVID-19") pandemic, all participants attended the hearing by telephone. Tr. 1302.

**LEGAL STANDARD**

## I.    District Court Review

"In reviewing a final decision of the SSA, this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (citing 42 U.S.C. § 405(g)) (other citation omitted). The Act holds that the Commissioner's decision is "conclusive" if it is supported by substantial evidence. 42 U.S.C. § 405(g). "Substantial evidence means more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (citations omitted). It is not the Court's function to "determine *de novo* whether [the claimant] is disabled." *Schaal v. Apfel*, 134 F. 3d 496, 501 (2d Cir. 1990).

## II.   The Sequential Evaluation Process

An ALJ must follow a five-step sequential evaluation to determine whether a claimant is disabled within the meaning of the Act. *See Parker v. City of New York*, 476 U.S. 467, 470-71 (1986). At step one, the ALJ must determine whether the claimant is engaged in substantial gainful work activity. *See* 20 C.F.R. § 404.1520(b). If so, the claimant is not disabled. If not, the ALJ proceeds to step two and determines whether the claimant has an impairment, or combination of impairments, that is "severe" within the meaning of the Act, meaning that it imposes significant restrictions on the claimant's ability to perform basic work activities. *Id*. § 404.1520(c). If the claimant does not have a severe impairment or combination of impairments meeting the durational requirements, the analysis concludes with a finding of "not disabled." If the claimant does, the ALJ continues to step three.

At step three, the ALJ examines whether a claimant's impairment meets or medically equals the criteria of a listed impairment in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"). *Id*. § 404.1520(d). If the impairment meets or medically equals the criteria of a Listing and meets the durational requirement, the claimant is disabled. *Id*. § 404.1509. If not, the ALJ determines the claimant's residual functional capacity, which is the ability to perform physical or mental work activities on a sustained basis notwithstanding limitations for the collective impairments. *See id*. § 404.1520(e)-(f).

The ALJ then proceeds to step four and determines whether the claimant's RFC permits him or her to perform the requirements of his or her past relevant work. 20 C.F.R. § 404.1520(f). If the claimant can perform such requirements, then he or she is not disabled. *Id*. If he or she cannot, the analysis proceeds to the fifth and final step, wherein the burden shifts to the Commissioner to show that the claimant is not disabled. *Id*. § 404.1520(g). To do so, the Commissioner must present evidence to demonstrate that the claimant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy" in light of his or her age, education, and work experience. *See Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (quotation marks omitted); *see also* 20 C.F.R. § 404.1560(c).

## ADMINISTRATIVE LAW JUDGE'S FINDINGS

The ALJ analyzed Plaintiff's claim for benefits under the process described above and made the following findings in his October 13, 2020 decision:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2013.

2. The claimant did not engage in substantial gainful activity during the requested closed period from August 15, 2009 to August 21, 2017 (20 CFR 404.1571 *et seq*., and 416.971 *et seq*.).

3. The claimant had the following severe impairments during the period at issue: HIV positive status with fatigue and adjustment disorder (20 CFR 404.1520(c) and 416.920(c)).

4. The claimant did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5. The claimant has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: simple, repetitive, one and two step tasks, no complex work, defined as involving multiple simultaneous goals or objectives or the need to independently set quality or quantity or methods standards, no more than one change per day in general work task or setting, no public contact, and occasional co-worker and supervisory contact.

6. The claimant has no past relevant work (20 CFR 404.1565 and 416.965).

7. The claimant was born on March 12, 1981 and was 28 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 CFR 404.1563 and 416.963).

8. The claimant has at least a high school education (20 CFR 404.1564 and 416.964).

9. Transferability of job skills is not an issue because the claimant does not have past relevant work (20 CFR 404.1568 and 416.968).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a)).

11. The claimant has not been under a disability, as defined in the Social Security Act, from August 15, 2009, through the date of this decision[3] (20 CFR 404.1520(g) and 416.920(g)).

Tr. 1302-17.

Accordingly, the ALJ determined that, based on the application for a period of disability and disability insurance benefits protectively filed on December 15, 2009, the claimant is not disabled under sections 216(i) and 223(d) of the Social Security Act. Tr. 1317. The ALJ also

---

[3] Although the ALJ stated that he found Plaintiff not disabled from the August, 15, 2009 through the date of his decision, he properly referenced the closed disability period of August 15, 2009 to August 21, 2017 multiple times throughout the decision. *See*, *e.g.*, Tr. 1302, 1304, 1308, 1313. 1316. Thus,the Court is satisfied that the ALJ's findings relate to the appropriate closed period.

determined that based on the application for supplemental security benefits protectively filed on December 15, 2009, the claimant is not disabled under section 1614(a)(3)(A) of the Act. Tr. 1318.

## ANALYSIS

Plaintiff asserts a single point of error. Plaintiff argues that the ALJ failed to properly apply the treating physician rule to Dr. Shon's opinions, ignoring significant portions of the opinions, and disregarding the Appeals Council's April 23, 2020 order. *See* ECF No. 11-1 at 18-26. Plaintiff also argues that the ALJ failed to address Dr. Shon's opinion that Plaintiff had a marked limitation in completing tasks in a timely manner due to deficiencies in concentration, persistence, and pace. *See id*. at 19, 21-24.

In response, the Commissioner argues that the ALJ's determination that Plaintiff could perform a reduced range of simple, repetitive work despite her severe impairments was supported by substantial evidence. *See* ECF No. 13-1 at 8-17. Further, argues the Commissioner, the ALJ reasonably granted only partial weight to Dr. Shon's opinion that Plaintiff had a marked limitation completing tasks in a timely manner, and, in any event, Dr. Shon's opinion was not necessarily inconsistent with the ALJ's RFC finding for a reduced range of simple work. *See id*.

A Commissioner's determination that a claimant is not disabled will be set aside when the factual findings are not supported by "substantial evidence." 42 U.S.C. § 405(g); *see also Shaw v. Chater*, 221 F.3d 126, 131 (2d Cir. 2000). Substantial evidence has been interpreted to mean "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id*. The Court may also set aside the Commissioner's decision when it is based upon legal error. *Rosa*, 168 F.3d at 77.

Upon review of the record in this case, the Court finds that the ALJ's RFC finding was supported by substantial evidence, including the objective medical evidence and opinion

evidence, as well as Plaintiff's reported daily activities and history of conservative treatment. Furthermore, the ALJ thoroughly considered Dr. Shon's opinions and reasonably accorded them less than controlling weight, as they were not supported by Dr. Shon's own treatment notes and inconsistent with the objective evidence in the record, including the other medical opinions. Accordingly, the Court finds no error.

Plaintiff alleges disability due to her HIV positive status,[4] diagnosed in 2006. Tr. 59, 174, 256. As previously noted, she returned to work on August 21, 2017, and therefore, this case addresses a closed time period from August 15, 2009 through August 21, 2017. Tr. 884, 1302. Plaintiff testified that she could not work during the period at issue due to infections, diarrhea, fatigue, and severe side effects to medications. Tr. 884, 885. Although Plaintiff admitted that she was not always compliant with her medications "in the early periods" of her illness, she asserted this was because "they had to find the right medicine that would work." Tr. 884-85. She testified that her fatigue stopped being disabling when she started taking a new medication about three years ago.[5] Tr. 885-86. She was also susceptible to eye infections, which caused her eyes to swell sometimes to the point she could not see at all, and she had blurred vision. Tr. 885. She related that her eye infections varied; sometimes they would last a week, and other times they would go right away. *Id*. She also testified that her medications caused dizziness, and she could not stand

---

[4] HIV stands for human immunodeficiency virus, which is the virus that causes HIV infection. The abbreviation "HIV" can refer to the virus or to HIV infection. AIDS stands for acquired immunodeficiency syndrome. AIDS is the most advanced stage of HIV infection. HIV attacks and destroys infection-fighting CD4 cells (CD4 T lymphocyte) of the immune system. A person with HIV is considered to have progressed to AIDS when: the number of their CD4 cells falls below 200 cells per cubic millimeter of blood (200 cells/mm3), or they develop one or more opportunistic infections regardless of their CD4 count. CD4 counts are between 500 and 1,600 cells/mm3 in a person with a healthy immune system. The loss of CD4 cells makes it difficult for the body to fight off infections, illnesses, and certain cancers. *See* https://www.hiv.gov/hiv-basics/overview/about-hiv-and-aids/what-are-hiv-and-aids (last visited Sept. 22, 2023).

[5] As the hearing was held in September 2020, the Court presumes that Plaintiff started this new medication some time in 2017.

for a long period of time (Tr. 887); she had uncontrollable bowel movements and frequent accidents (Tr. 888); and she regularly got sores in her mouth and thrush (Tr. 889).

Plaintiff also testified that she had difficulty sleeping on certain medications (Tr. 890) and felt depressed (Tr. 891). She alleged she was depressed every day, and her mental health affected her ability to comply with treatment. Tr. 892-93. She received mental health treatment at Lakeshore for about six months, but she had transportation issues. Tr. 890. She also attended a support group at Red Cross for about five or six years and Horizon for six months. Tr. 890-91. Plaintiff testified that she started to get control of her mental health "a little bit" in 2012. Tr. 893. She also testified that she started to regain her ability to take care of her house in the middle of 2011, and in 2013, she no longer needed help to take care of her house. *Id*. She attributed this to taking a new medication with less side effects. Although she obtained her driver's license in September 2017 (Tr. 894-95), she did not have a license during the period at issue, and she alleged she could not take public transportation, as it was too long of a commute, and she always needed to have a bathroom available. Tr. 895.

On October 29, 2014, Dr. Shon completed a form entitled "Medical statement regarding AIDS and HIV for Social Security disability claim." Tr. 776-79. She opined that Plaintiff could not work any hours per day, and she could stand for only 15 minutes at a time, sit for only 30 minutes at time, and lift no weight. Tr. 778. Dr. Shon also opined that Plaintiff had no significant limitations in her abilities to: understand, remember, and carry out very short and simple instructions; understand, remember, and carry out detailed instructions; accept supervision; and get along with coworkers. *Id*. Dr. Shon further opined that Plaintiff had moderate limitations in her abilities to maintain attention and concentration and work with others. *Id*.

Next, selecting from a checklist of 40 items (*see* Tr. 776-77), Dr. Shon checked off boxes indicating that Plaintiff had "marked difficulties in completing tasks in a timely manner due to deficiencies in concentration, persistence, and pace." Tr. 777. The only explanation Dr. Shon provided for her opinions was that "[d]ue to AIDs and side effects from medication, [Plaintiff] is not able to work and concentration is affected." Tr. 778.

In a letter dated March 16, 2015, Dr. Shon opined that Plaintiff could not work because of chronic fatigue because she did not have the "physical stamina to be able to perform such work on a consistent basis, and certainly not for eight hours a day, five days a week," and Plaintiff had been so limited since 2009. Tr. 796. Dr. Shon specifically stated that the "severity of [Plaintiff's] condition and her resulting fatigue was consistent with the clinical findings in her record." *Id*. "Although her findings with respect to her T-cell count and viral load fluctuate from examination to examination, this is common for those who suffer from HIV/AIDS." *Id*. Dr. Shon opined that Plaintiff's chronic fatigue had persisted throughout her treatment, not withstanding these fluctuations. *Id*. However, she also indicated that Plaintiff "maybe [*sic*] able to work limited, part-time basis." *Id*.

At the July 25, 2018 hearing, Dr. Stein testified that Plaintiff had HIV/AIDS, which was under control at the time of the prior hearing, and there were no other significant physical ailments. Tr. 1415-16. He opined that no listing was met or medically equaled. Tr. 1416.

As noted above, pursuant to the District Court remand order, the Appeals Council directed the ALJ to further evaluate the opinions of treating physician Dr. Shon and medical expert Dr. Stein. Tr. 1392-93. Specifically, the Appeals Council ordered the ALJ to:

- Give consideration to the opinion evidence pursuant to the provisions of 20 CFR 404.1527 and 416.927, and explain the weight given to such opinion evidence. As appropriate, the Administrative Law Judge may request the sources provide additional evidence and/or further clarification of the opinions and medical source

statements about what the claimant can still do despite the impairments (20 CFR 404.1520b and 416.920b). The Administrative Law Judge may enlist the aid and cooperation of the claimant's representative in developing evidence from the claimant's treating sources.

- Give further consideration to the claimant's maximum residual functional capacity and provide appropriate rationale with specific references to evidence of record in support of the assessed limitations (20 CFR 404.1545 and 416.945 and Social Security Ruling 96-8p).

- If warranted by the expanded record, obtain supplemental evidence from a vocational expert to clarify the effect of the assessed limitations on the claimant's occupational base (Social Security Ruling 85-15). The hypothetical questions should reflect the specific capacity/limitations established by the record as a whole. The Administrative Law Judge will ask the vocational expert to identify examples of appropriate jobs and to state the incidence of such jobs in the national economy (20 CFR 404.1566 and 416.966). Further, before relying on the vocational expert evidence the Administrative Law Judge will identify and resolve any conflicts between the occupational evidence provided by the vocational expert and information in the Dictionary of Occupational Titles ("DOT") and its companion publication, the Selected Characteristics of Occupations (Social Security Ruling 00-4p).

Tr. 1392-93.

Furthermore, with respect to Dr. Stein's opinion, the Appeals Council specifically found that some of the ALJ's reasons for assigning great weight to Dr, Stein's opinion were "flawed." Tr. 1392. Namely, the Appeals Council found "problematic" the fact that Dr. Stein is not a specialist in HIV/AIDS and was not aware of all the medical evidence. *Id*. The Appeals Council also noted that Dr. Stein discussed Plaintiff's role as a caregiver in offering his opinion about her fatigue and associated limitations, even though he did not have the opportunity to hear Plaintiff's testimony in this regard (Dr. Stein gave his testimony and left the call prior to Plaintiff giving her testimony). *Id*.

Finally, the Appeals Council noted that further evaluation of Dr. Stein's testimony was necessary because the ALJ did not address testimony suggesting that Plaintiff may have been disabled prior to going into remission in 2011, when she was non-compliant, based on Dr. Stein's

comment that Plaintiff's condition would not necessarily have moved into remission even if she were compliant. Tr. 1392 (citing Tr. 878).

A claimant's RFC is the most she can still do despite her limitations and is assessed based on an evaluation of all relevant evidence in the record. *See* 20 C.F.R. §§ 404.1520(e), 404.945(a)(1), (a)(3); SSR 96-8p, 61 Fed. Reg. 34,474-01 (July 2, 1996). At the hearing level, the ALJ has the responsibility of assessing the claimant's RFC. *See* 20 C.F.R. § 404.1546(c); SSR 96-5p, 61 Fed. Reg. 34,471-01 (July 2, 1996); *see also* 20 C.F.R. § 404.1527(d)(2) (stating the assessment of a claimant's RFC is reserved for the Commissioner). Determining a claimant's RFC is an issue reserved to the Commissioner, not a medical professional. *See* 20 C.F.R. § 416.927(d)(2) (indicating that "the final responsibility for deciding these issues [including RFC] is reserved to the Commissioner"); *Breinin v. Colvin*, No. 5:14-CV-01166(LEK TWD), 2015 WL 7749318, at *3 (N.D.N.Y. Oct. 15, 2015), *report and recommendation adopted*, 2015 WL 7738047 (N.D.N.Y. Dec. 1, 2015) ("It is the ALJ's job to determine a claimant's RFC, and not to simply agree with a physician's opinion.").

Additionally, it is within the ALJ's discretion to resolve genuine conflicts in the evidence. *See Veino v Barnhart*, 312 F.3d 578, 588 (2d Cir. 2002). In so doing, the ALJ may "choose between properly submitted medical opinions." *Balsamo v. Chater*, 142 F.3d 75, 81 (2d Cir. 1998). Moreover, an ALJ is free to reject portions of medical-opinion evidence not supported by objective evidence of record, while accepting those portions supported by the record. *See Veino*, 312 F.3d at 588. Indeed, an ALJ may formulate an RFC absent any medical opinions. "Where, [] the record contains sufficient evidence from which an ALJ can assess the [plaintiff's] residual functional capacity, a medical source statement or formal medical opinion is not necessarily

required." *Monroe v. Comm'r of Soc. Sec.*, 676 F. App'x 5, 8 (2d Cir. 2017) (internal citations and quotation omitted).

Moreover, the ALJ's conclusion need not "perfectly correspond with any of the opinions of medical sources cited in [his] decision," because the ALJ is "entitled to weigh all of the evidence available to make an RFC finding that [i]s consistent with the record as a whole." *Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013) (citing *Richardson v. Perales*, 402 U.S. 389, 399 (1971) (the RFC need not correspond to any particular medical opinion; rather, the ALJ weighs and synthesizes all evidence available to render an RFC finding consistent with the record as a whole); *Castle v. Colvin*, No. 1:15-CV-00113 (MAT), 2017 WL 3939362, at *3 (W.D.N.Y. Sept. 8, 2017) (The fact that the ALJ's RFC assessment did not perfectly match a medical opinion is not grounds for remand.).

Furthermore, the burden to provide evidence to establish the RFC lies with Plaintiff—not the Commissioner. *See* 20 C.F.R. §§ 404.1512(a), 416.912(a); *see also Talavera*, 697 F.3d at 151 ("The applicant bears the burden of proof in the first four steps of the sequential inquiry . . . ."); *Mitchell v. Colvin*, No. 14-CV-303S, 2015 WL 3970996, at *4 (W.D.N.Y. June 30, 2015) ("It is, however, Plaintiff's burden to prove his RFC."); *Poupore v. Astrue*, 566 F.3d 303, 305-06 (2d Cir. 2009) (The burden is on Plaintiff to show that she cannot perform the RFC as found by the ALJ.).

As noted above, Plaintiff's sole argument on appeal is that the ALJ erred in weighing the opinion of her treating physician Dr. Shon.[6] Specifically, Plaintiff argues that the ALJ failed to

---

[6] Although Plaintiff's brief repeats some of the criticisms of Dr. Stein's opinion noted by the Appeals Council (such as Dr, Stein's lack of specialty training in HIV/AIDS) (*see* Tr. 1392-93), she does not allege any error in the ALJ's analysis of Dr. Stein's opinion. *See generally* ECF No. 11-1. Accordingly, Plaintiff has waived issues pertaining to the ALJ's discussion at all other steps of the sequential evaluation process and any other issues not specifically challenged. *Poupore v. Astrue*, 566 F.3d 303, 306 (2d Cir. 2009) (issues not sufficiently argued in the briefs are considered waived and normally will not be addressed on appeal); *Tolbert v. Queens Coll.*, 242 F.3d 58, 75 (2d Cir.

properly apply the treating physician rule in his evaluation of Dr. Shon's opinions. *See* ECF No. 11-1 at 15-21. For claims filed prior to March 27, 2017,[7] the opinions of Plaintiff's treating physicians should be given "controlling weight" if they are "well-supported by medically acceptable clinical and laboratory diagnostic techniques and [are] not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. §§ 404.1527(c)(2). An ALJ is required to consider several factors in determining how much weight an opinion should receive, including the length of the relationship and frequency of examinations, nature of the relationship, medical evidence that supports the opinion, consistency with the record as a whole, and if the physician's specialty is relevant to the impairment. *Burgess v. Astrue*, 537 F. 3d 117, 129 (2d Cir. 2008).

If the ALJ gives the treating physician's opinion less than controlling weight, he must provide good reasons for doing so. *Clark v. Comm'r of Soc. Sec.*, 143 F.3d 115, 118 (2d Cir. 1998); *see also Schaal v. Apfel*, 134 F. 3d 496, 503-504 (2d Cir. 1998). Good reasons for not assigning treating source opinion controlling weight are shown through express consideration of these factors, although a "searching review of the record" can also demonstrate good reasons for the weight given the opinion that does not traverse the treating source rule. *See Estrella v. Berryhill*, 925 F.3d 90, 95-96 (2d Cir. 2019) (citing *Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004)). In addition, a treating source opinion cannot be entitled to controlling weight if it is not consistent with the source's own treatment notes or with other substantial evidence. *See Halloran*, 362 F.2d at 31-32 (citing *Veino*, 312 F.3d at 588); *Cichocki v. Astrue*, 729 F. App'x 71, 77 (2d Cir. 2013).

---

2001) ("It is a settled appellate rule that issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived.").

[7] New regulations regarding the evaluation of medical evidence and rescission of Social Security Rulings 96-2p, 96-5p, 96-6p, and 06-03p, took effect on March 27, 2017. *See* Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844-01 (Jan. 18, 2017). Because Plaintiff's claims were filed on December 15, 2009, the previous regulations are applicable to her claim.

Contrary to Plaintiff's argument (*see* ECF No. 11-1 at 20-21), the ALJ properly considered the regulatory factors and reasonably granted only partial weight to Dr. Shon's October 2014 check-box form opinion (Tr. 775-79)[8] and little weight to her March 2015 letter stating that Plaintiff was unable to work full time due to fatigue.  Tr. 1314-15. *See* 20 C.F.R. §§ 404.1527(c)(2)(i)-(ii), (5) and 416.927(c)(2)(i)-(ii), (5) (listing as factors for the ALJ to consider: nature, extent, and length of treatment relationship, and frequency of examination, and specialty).

Although the ALJ noted that Dr. Shon was "a treating physician and a specialist," he explained that the opinions in the October 2014 opinion form were both unsupported and inconsistent with most of the other evidence, including multiple other opinions on Plaintiff's physical functioning.  Tr. 1314-15, 775-79. For instance, the ALJ noted that consultative internal medicine examiners Cyndria Bender, M.D. ("Dr. Bender"), and John Schwab, D.O. ("Dr. Schwab"), both opined that Plaintiff had no physical limitations.  Tr. 1314-15, 256-59, 742-45. The ALJ reasonably gave "great weight" to these opinions, finding that they were supported by the doctors' largely normal examination findings and consistent with other evidence in the record. *See* 20 C.F.R. §§ 404.1527(c)(4), 416.927(c)(4) ("the more consistent a medical opinion is with the record as a whole, the more weight we will give to that medical opinion."); Tr. 1314, 256-58, 743-44.

Medical expert Dr. Stein similarly opined that Plaintiff had no physical limitations (Tr. 867-993), but the ALJ afforded only "partial weight "to Dr. Stein's opinion, explaining that it was based on a review of only some records in Plaintiff's file; Dr. Stein made incorrect statements

---

[8] As this Court has noted previously, check-box forms such as the one submitted by Dr. Shon are of limited evidentiary value. *See, e.g.*, *Koerber v. Comm'r of Soc. Sec.*, No. 6:19-CV-1070-DB, 2020 WL 1915294, at *1 (W.D.N.Y. Apr. 20, 2020); *Halloran v. Barnhart*, 362 F.3d 28, 31 n.2 (2d Cir. 2004) ("[t]he standardized form . . . is only marginally useful for purposes of creating a meaningful and reviewable factual record"); *see also Schillo v. Kijakazi*, 31 F.4th 64, 72, 77 (2d Cir. 2022) (an ALJ may reasonably grant little weight to treating source opinions rendered in "check box" fashion, with almost no explanation)..

about Plaintiff's alleged non-compliance with treatment; he is not an HIV specialist; and he did not hear Plaintiff's testimony. Tr. 1314. Nevertheless, the ALJ found Dr. Stein's conclusion that Plaintiff generally had no physical restriction was supported by her conservative treatment history and normal examination findings. *Id*. The ALJ further explained that the fatigue noted by Dr. Stein was accommodated by limiting Plaintiff to the range of simple work described in the RFC. *Id*.

The ALJ also considered that Dr. Shon's opinion was not supported by her own treatment notes. As the ALJ explained, Dr. Shon's opinion that Plaintiff could not work any hours per day, stand for only 15 minutes at a time, sit for only 30 minutes at time, and lift no weight was not supported by Dr. Shon's generally normal physical examination findings.  Tr. 1314-15, 801, 802, 803, 804, 805, 806, 808-09, 811-12, 815-16, 820-21, 826-27, 832-33. *See* 20 C.F.R. §§ 404.1527(c)(3), 416.927(c)(3) ("The more a medical source presents relevant evidence to support a medical opinion, particularly medical signs and laboratory findings, the more weight we will give that medical opinion.").

As the ALJ noted, at a treatment visit with Dr. Shon on the very same day the HIV assessment form was completed, Plaintiff reported "no concerns" and had no gastrointestinal complaints. Tr. 1314, 819. She was also in no distress, well appearing, and well nourished. *Id*. Likewise, at treatment visits immediately before (July 2014) and after (January 2015) the form was completed, Plaintiff was doing well. Tr. 1314, 814, 825. At the January 2015 visit, Plaintiff reported regular bowel movements (Tr. 825), and at the visit in July 2014, she denied any problems (Tr. 814).  Tr. 1314. As to Dr. Shon's indication that Plaintiff had carcinoma of the cervix, the ALJ noted that there was no evidence of this in the record. Tr. 1314.

Plaintiff contends that the ALJ mischaracterized the evidence when he found that Dr. Shon's opinions were not supported by her treatment notes and overlooked the fact that some of her treatment notes supported the more restrictive portions of her opinion. *See* ECF No. 11-1 at 24-26. Specifically, Plaintiff alleges that Dr. Shon noted Plaintiff was "symptomatic for HIV," was "taking a wide array of medications for her HIV," and had stomach and skin problems, as well as eye infections, due to her medications. *See id*. at 24-25. Contrary to Plaintiff's argument, however, the ALJ's decision reflects that he considered these symptoms in his analysis. For example, the ALJ noted Plaintiff's history of HIV, with severe side effects from medication," "infections, diarrhea, fatigue," "eye infections," "weight loss," and "sores in her mouth and thrush." Tr. 1307. Thus, the ALJ considered the evidence Plaintiff cites in support of her argument. The ALJ also noted that consultative examiner Dr. Bender considered several of these same complaints and still found, based on Plaintiff's unremarkable physical examination findings, that Plaintiff had no physical limitations Tr. 1308, 256-59.

Moreover, the evidence to which Plaintiff points, namely that she experienced symptoms of HIV (*see* ECF No. 11-1 at 24-25), does not support Dr. Shon's opinion that Plaintiff could not work, lift any weight, and barely walk or sit (Tr. 778). Tr. 1307. *See Schillo v. Kijakazi*, 31 F.4th 64, 72, 75-76 (2d Cir. 2022) (concluding that the ALJ articulated good reasons for not affording controlling weight to "[treating] opinions [that] were conclusory, unhelpful with respect to assessing RFC, and inconsistent with the objective medical evidence"). Plaintiff's arguments, therefore, are simply a request for a reweighing of the evidence in her favor, which is inappropriate under the substantial evidence standard of review. *Pellam v. Astrue*, 508 F. App'x 87, 91 (2d Cir. 2013) ("We think that Pellam is, in reality, attempting to characterize her claim that the ALJ's determination was not supported by substantial evidence as a legal argument in

order to garner a more favorable standard of review."). The fact that the evidence may have been weighed differently, or that there may be a reasonable interpretation of the evidence in Plaintiff's favor, is not probative. *Caron v. Colvin*, 600 F. App'x 43, 44 (2d Cir. 2015).

Based on the foregoing, the ALJ properly considered Dr. Shon's opinions and reasonably assigned partial weight to her October 2014 HIV assessment form and little weight to her March 2015 letter stating that Plaintiff was unable to work full time due to her fatigue. Accordingly, the Court finds no error.

Plaintiff also argues that remand is required because the ALJ failed to address Dr. Shon's opinion that Plaintiff had a marked limitation in completing tasks in a timely manner due to deficiencies in concentration, persistence, and pace. *See* ECF No. 11-1 at 19, 21-24.  Social Security Administration regulations define "marked" limitations as: "functioning in this area independently, appropriately, effectively, and on a sustained basis is seriously limited." 20 C.F.R. Pt. 404, Subpt. P, §12.00(F)(2)(d). Concentration, persistence, or pace are "the abilities to focus attention on work activities and stay on task at a sustained rate." *Id*. at § 12.00(E)(3).

Although Plaintiff contends that the ALJ "ignored" this aspect of Dr. Shon's opinion (*see* ECF No. 11-1 at 19), the ALJ expressly noted Dr. Shon's assessment that Plaintiff had "marked difficulties in completing tasks in a timely manner due to deficiencies in concentration, persistence and pace." Tr. 1309, 777. In explaining his rationale for assigning only partial weight to Dr. Shon's opinion, the ALJ noted that "the findings of only moderate mental limitations [were] consistent with the record as a whole for the reasons noted elsewhere." Tr. 1314. Although the ALJ did not explicitly discuss Dr. Shon's opined marked limitation in his explanation, the Court is able to glean the ALJ's reasoning from a review of the entire decision, as well as the record. *See Sergio A. v. Comm'r of Soc. Sec.*, No. 1:20-CV-1739-DB, 2022 WL 1004345, at *8

(W.D.N.Y. Apr. 4, 2022) (even where ALJ could have more fully articulated the basis for his conclusion, any such failure is harmless, where it was "possible to glean the ALJ's rationale" from a review of the entire decision) (citing *Mongeur v. Heckler*, 722 F.2d 1033, 1040 (2d Cir. 1983)); *see also Catlin v. Comm'r of Soc. Sec.*, No. 1:19-CV-0622 (WBC), 2020 WL 5513803, at *7 (W.D.N.Y. Sept. 14, 2020) ("Although the ALJ did not cite to the record in her analysis of the medical opinion evidence, the ALJ's reasoning can be easily gleaned from the record.") (citing *Guerra v. Saul*, 778 F. App' x 75, 77 (2d Cir. 2019)).

Notably, Dr. Shon opined later in the same check-box form opinion, that Plaintiff had only a moderate limitation in her ability to maintain attention and concentration, and no significant limitations in her abilities to understand, remember, and carry out both simple and complex instructions. Tr. 778. Furthermore, the ALJ noted that Dr. Shon's treatment records consistently indicateD normal mental health findings. Tr. 1316, 809, 812, 816, 821, 825, 1091, 1102, 1110, 1115.

The ALJ also considered and gave only partial weight to a similar opinion from Lynn Grucza, NP ("Ms. Grucza"), who opined on March 5, 2010, that Plaintiff had marked limitations in her abilities to perform at a consistent pace without an unreasonable number and length of rest periods. Tr. 1310, 1316, 342-46. As the ALJ explained, Ms. Grucza's opinion was also inconsistent with the overall evidence, including Plaintiff's sporadic and conservative mental health treatment, her daily activities, and mental status examinations that were entirely or largely normal. Tr. 1316, 253-54. Thus, the ALJ reasonably concluded that Dr. Shon's assessment of only moderate psychiatric limitations (Tr. 778) was consistent with the record. Tr. 1309, 1314.

Moreover, any error by the ALJ in not explicitly discussing Dr. Shon's opinion that Plaintiff had a marked limitation in timely completing tasks is harmless. *See Zabala v. Astrue*,

595 F.3d 402, 409-10 (finding that an ALJ's failure to consider evidence did not require remand where there was not a "reasonable likelihood" that consideration of the evidence "would have changed the ALJ's determination"). For all the reasons discussed above, the Court finds that the ALJ's failure to explicitly explain his consideration of all aspects of Dr. Shon's internally inconsistent opinion is not a basis for remand. While Plaintiff may prefer a more explicit discussion of every aspect of Dr. Shon's opinion, the substantial evidence standard focuses on whether the ALJ applied the correct legal standards and whether the ALJ's determination is supported by substantial evidence. *Cichocki v. Astrue*, 729 F.3d 172, 178 n.3 (2d Cir. 2013) (holding that "[t]he relevant inquiry is whether the ALJ applied the correct legal standards and whether the ALJ's determination is supported by substantial evidence," and where the ALJ's analysis permits meaningful judicial review, remand is not warranted solely for a more explicit analysis). Such is the case here.

Dr. Shon's opinion that Plaintiff had marked limitations in timely completing tasks was also inconsistent with the other opinion evidence in the record. For instance, the ALJ discussed the opinions of consultative examiners Dr. Hill and Gregory Fabiano, Ph.D. ("Dr. Fabiano"). Tr. 1314-15. Dr. Hill opined that Plaintiff had no mental limitations that would interfere with her ability to function on daily basis (Tr. 360-61) and Dr. Fabiano opined only mild mental limitation (Tr. 737). Tr. 1315. However, the ALJ reasonably afforded these two opinions "little weight," explaining that the combination of Plaintiff's fatigue and depression, along with the multiple opinions noting moderate mental limitations, suggested greater mental restrictions (although not to the extent alleged by Dr. Shon or Ms. Grucza). These opinions nevertheless lend support to the ALJ's RFC finding that Plaintiff should be limited to a range of simple work. Tr. 1315-16.

Finally, Dr. Shon's opinion that Plaintiff had marked limitations in completing tasks in a timely manner due to deficiencies in concentration, persistence or pace is not necessarily inconsistent with the ALJ's RFC finding for "simple, repetitive, one and two step tasks" with "no complex work." Tr. 1306-07. *See, e.g., Danielle B. v. Comm'r of Soc. Sec.*, No. 19-CV-0996-MWP, 2021 WL 766857, at *4 (W.D.N.Y. Feb. 26, 2021). Courts in the Second Circuit "have repeatedly held that '[m]arked limitations in mental functioning . . . do not mandate a finding of disability, but can be addressed with additional limitations to a plaintiff's RFC, such as limiting plaintiff to simple, routine and repetitive tasks in a work environment free of fast-paced production requirements." *Kya M. v. Comm'r of Soc. Sec.*, 506 F. Supp. 3d 159, 166 (W.D.N.Y. 2020). "Court[s] ha[ve] found that a claimant with a marked limitation in performing a work-related function could perform that function occasionally;" *Perry v. Comm'r of Soc. Sec.*, No. 3:15-CV-0758 (GTS), 2017 WL 5508775, at *7 (N.D.N.Y. Jan. 23, 2017), *aff'd sub nom. Perry v. Berryhill*, 711 F. App'x 9 (2d Cir. 2017). Specifically, "an RFC limiting a claimant to simple, routine tasks addresses limitations in concentration, persistence, and pace." *Id*.

Based on the foregoing, Plaintiff's argument that the ALJ failed to follow the District Court's remand order with respect to Dr. Shon's opinion lacks merit. *See* ECF No. 11-1 at 18-26. As discussed above, the ALJ's analysis was thorough, and Plaintiff fails to demonstrate that anything more was required.

Additionally, the ALJ did not rely solely on opinion evidence in assessing Plaintiff's RFC. *See* 20 C.F.R. §§ 404.1520(e), 416.920(e) ("we will assess the residual functional capacity based on all the relevant medical and other evidence in your case record"); 20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3) (explaining that the adjudicator will assess the RFC based on all the relevant evidence in the case record); 20 C.F.R. §§ 404.1513(a)(1),(4), 416.913(a)(1),(4)

(explaining that evidence that can be considered includes objective medical evidence, such as medical signs and laboratory findings; as well as evidence from nonmedical sources, including the claimant, such as from forms contained in the administrative record). *Matta*, 508 F. App'x at 56. Moreover, it is the responsibility of the ALJ to resolve conflicts in the evidence and to weigh the evidence available to make an RFC finding that is consistent with the record. *See Corbiere v. Berryhill*, 760 F. App'x 54, 57 (2d Cir. 2019) (holding that the ALJ properly resolved conflicts in the medical evidence after considering the record in its entirety).

As noted above, the ALJ explained that Plaintiff's mental status examinations were entirely or largely normal, including that Plaintiff was cooperative, had an adequate manner of relating, social skills, and overall presentation, and exhibited appropriate eye contact, normal thought processes, neutral mood, intact attention and concentration, intact memory, and average cognitive functioning. Tr. 1316, 253-54, 735-36, 1091, 1102, 1110, 1115.

The ALJ also properly considered Plaintiff's reported activities, *See* 20 C.F.R. § 404.1529(c)(3)(i) (An ALJ may consider the nature of a claimant's daily activities in evaluating the consistency of allegations of disability with the record as a whole.); *see also Ewing v. Comm'r of Soc. Sec.*, No. 17-CV-68S, 2018 WL 6060484, at *5 (W.D.N.Y. Nov. 20, 2018) ("Indeed, the Commissioner's regulations expressly identify 'daily activities' as a factor the ALJ should consider in evaluating the intensity and persistence of a claimant's symptoms.") (citing 20 C.F.R. § 416.929(c)(3)(i)); As the ALJ explained, Plaintiff provided care for multiple children during the relevant period, and was able to cook, clean, wash laundry, shop, drive, manage funds, and take of her personal hygiene despite her illness.  Tr. 1313, 257, 736, 742, 1136.

The ALJ also reasonably noted that Plaintiff's "sporadic and conservative mental health treatment" was consistent with findings of only mild to moderate limitations in most areas of

mental functioning. Tr. 1316. *See* SSR 16-3p, 2017 WL 5180304, at *9 (ALJ properly considers whether level of treatment is commensurate with level of complaints); *see also Penfield v. Colvin*, 563 F. App'x 839, 840 (2d Cir. 2013) (evidence of a conservative treatment regimen supported the ALJ's determination that plaintiff's symptoms were not as severe as she alleged); see also *Snyder v. Comm'r of Soc. Sec.*, 840 F. App'x 641, 643 (2d Cir. 2021) (conservative treatment may weigh against a disability finding) (internal citations omitted).

For all the reasons discussed above, the Court finds that the ALJ properly considered the evidence of record, including the medical opinion evidence, the treatment notes, and Plaintiff's daily activities, and the ALJ's findings are supported by substantial evidence. Accordingly, the Court finds no error. When "there is substantial evidence to support either position, the determination is one to be made by the fact-finder." *Davila-Marrero v. Apfel*, 4 F. App'x 45, 46 (2d Cir. Feb. 15, 2001) (citing *Alston v. Sullivan*, 904 F.2d 122, 126 (2d Cir. 1990)). While Plaintiff may disagree with the ALJ's conclusion, Plaintiff's burden was to show that no reasonable mind could have agreed with the ALJ's conclusions, which she has failed to do.

The substantial evidence standard is "a very deferential standard of review – even more so than the 'clearly erroneous' standard," and the Commissioner's findings of fact must be upheld unless "a reasonable factfinder would *have to conclude* otherwise." *Brault*, 683 F.3d at 448 (emphasis in the original). As the Supreme Court explained in *Biestek v. Berryhill*, "whatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high" and means only "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (internal citations omitted).

## <u>CONCLUSION</u>

Plaintiff's Motion for Judgment on the Pleadings (ECF No. 11) is **DENIED**, and the Commissioner's Motion for Judgment on the Pleadings (ECF No. 13) is **GRANTED**. Plaintiff's Complaint (ECF No. 1) is **DISMISSED WITH PREJUDICE**. The Clerk of Court will enter judgment and close this case.

**IT IS SO ORDERED**.

DON D. BUSH
UNITED STATES MAGISTRATE JUDGE